```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF MINNESOTA
                Civil No. 13-435(DSD/JJK)
```

Daniel L. Fancher,

       Plaintiff,

v.                                                  **ORDER**

Sokhom Klann and Andrew Allen,
in their individual capacities
as officers of the Minneapolis
Police Department and City of
Minneapolis,

       Defendants.

     Robert Bennett, Esq. and Gaskins, Bennett, Birrell and
     Schupp, LLP, 333 South Seventh Street, Suite 2900,
     Minneapolis, MN 55402, counsel for plaintiff.

     Sarah C.S. McLaren, Esq., Office of the Minneapolis City
     Attorney, 350 South Fifth Street, Room 210, Minneapolis,
     MN 55415, counsel for defendants.

This matter is before the court upon the motion by plaintiff Daniel L. Fancher to exclude expert testimony and the motion for partial summary judgment by defendants Sokhom Klann, Andrew Allen and the City of Minneapolis (City). Based on a review of the file, record and proceedings herein, and for the following reasons, the court grants in part the motion to exclude and grants the motion for summary judgment.

**BACKGROUND**

This excessive-force dispute arises out of a June 7, 2012, incident between Fancher and Minneapolis police officers Klann and

Allen.  At approximately 3:30 that morning, the officers responded to a 911 call of individuals throwing objects at vehicles.  McLaren Decl. Ex. A at 1, ECF No. 22.   Two of Fancher's friends were outside his apartment smoking cigarettes at the time police responded to the incident.  Fancher Dep. 20:20-22.  The friends subsequently reentered Fancher's apartment.  Id. at 21:11-25. Thereafter, the officers entered Fancher's apartment through a bedroom window.  Id. at 26:17-24.

Fancher alleges that, as he walked down his hallway, Klann grabbed him by the neck, pushed him against the wall and struck him on the head with his flashlight.  Id. at 26:21-27:2.  The officers then proceeded down the hallway to speak to Fancher's friends.  Id. at 30:16-24.  Fancher alleges that the officers also destroyed several items of personal property in the apartment, including a television and laptop.  Id. at 35:15-25.

All three individuals were placed in the squad car.  Vettleson Aff. Ex. B, at 9.  The officers radioed an "all-clear" signal and requested an ambulance for Fancher.  Id.  Fancher was taken by ambulance to the hospital, where he was diagnosed with a scalp laceration that required four sutures.  Id. Ex. E at 3, 5. Fancher was charged with misdemeanor obstruction of legal process, a charge that was later dropped.  Bennett Aff. ¶ 3.  After the charges were

initially dropped, Fancher was again charged with misdemeanor and gross misdemeanor obstructing legal process relating to the same incident.  <u>Id.</u>  That second set of charges was also dropped.  <u>Id.</u>

On February 22, 2013, Fancher filed this action, alleging unreasonable seizure and excessive force under 42 U.S.C. § 1983 and a claim for false arrest.  Fancher moves to exclude the expert testimony of Joshua Lego.  Defendants move for partial summary judgment on Fancher's claims of municipal liability against the City.

## DISCUSSION

### I.  Expert Testimony[1]

Fancher moves to exclude the expert testimony of Joshua Lego. Federal Rule of Evidence 702 provides that:

> [a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Under Rule 702, the court acts as a gatekeeper to determine

---

[1] The court notes that all pre-trial evidentiary rulings are provisional in nature and subject to modification at trial.

"whether the witness is qualified to offer expert testimony." Schmidt v. City of Bella Villa, 557 F.3d 564, 570 (8th Cir. 2009) (citing Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589 (1993)).

An expert must possess the "knowledge, skill, experience, training or education sufficient to assist the trier of fact." Robinson v. GEICO Gen. Ins. Co., 447 F.3d 1096, 1100 (8th Cir. 2006) (citation and internal quotation marks omitted). This standard is satisfied when the expert's testimony "advances the trier of fact's understanding to any degree." Id. (citation and internal quotation marks omitted). Further, Rule 702 "require[s] that the area of the witness's competence matches the subject matter of the witness's testimony." Id. at 1101 (citation and internal quotation marks omitted). "Gaps in an expert witness's qualifications or knowledge generally go to the weight of the witness's testimony, not its admissibility." Id. at 1100 (citations and internal quotation marks omitted).

The court must also "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." Schmidt, 557 F.3d at 570 (citing Daubert, 509 U.S. at 589). The court considers several nonexclusive factors when determining the reliability of an expert's opinion, including:

> (1) whether the theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential

> rate of error; (4) whether the theory has been generally accepted; ... [(5)] whether the expertise was developed for litigation or naturally flowed from the expert's research; [(6)] whether the proposed expert ruled out other alternative explanations; and [(7)] whether the proposed expert sufficiently connected the proposed testimony with the facts of the case.

Lauzon v. Senco Prods., Inc., 270 F.3d 681, 686-87 (8th Cir. 2001) (citations and internal quotation marks omitted). This "flexible and fact specific" inquiry allows the court to "use, adapt or reject [the] factors as the particular case demands." Unrein, 394 F.3d at 1011. The proponent of the expert testimony bears the burden of proving its admissibility by a preponderance of the evidence. See Lauzon, 270 F.3d at 686.

Fancher argues that complete exclusion of Lego's testimony is warranted because Lego (1) relied on a distorted version of the facts to which Fancher and the officers testified, (2) assumed facts that were not in the officers' police reports and (3) engaged in improper credibility determinations. Lego, however, has considerable experience in police practices, use of force techniques and excessive force cases. See, e.g., Vettleson Aff. Ex. O, at 1-5. "Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded." Children's Broad. Corp. v. Walt Disney Co., 357 F.3d 860, 865 (8th Cir. 2004) (citations and internal quotation marks omitted). Given Lego's expertise, the court finds

that his proposed testimony is not "fundamentally unsupported." Further, any "[d]isagreements about methodology and technique" used by Lego "go to the weight the jury should give the evidence rather than its admissibility." Shoaf v. Am. Way Transps., Inc., 47 F. App'x 780, 782 (8th Cir. 2002) (per curiam) (citation omitted). Indeed, Fancher will have the opportunity to cross-examine Lego at trial regarding his methodology, and it is "within the province of the jury to evaluate issues of fact and credibility." Minn. Supply Co. v. Raymond Corp., 472 F.3d 524, 544 (8th Cir. 2006). As a result, complete exclusion of Lego's testimony is not warranted.

Fancher next argues that several portions of Lego's testimony are outside of his area of expertise. Specifically, Fancher argues that Lego is not qualified to testify (1) regarding forensic pathology, anatomy, physiology or (2) as to legal conclusions. The court agrees, and will not allow Fancher to testify at trial regarding areas outside his expertise as a police practices expert. See Robinson, 447 F.3d at 1101 ("[T]he area of the witness's competence [must] match[] the subject matter of the witness's testimony." (citation and internal quotation marks omitted)). As a result, the court grants in part the motion to exclude Lego's testimony.

## II. Summary Judgment

Defendants argue that summary judgment is warranted on the municipal liability claim against the City.

### A.   Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. A party asserting that a genuine dispute exists — or cannot exist — about a material fact must cite "particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). If a plaintiff cannot support each essential element of a claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Celotex, 477 U.S. at 322-23.

**B.   Municipal Liability**

Fancher alleges that the City of Minneapolis is liable for the acts of its officers because it maintained an unconstitutional custom of deliberate indifference to its officers' use of excessive force. "[A] municipality may be held liable for the unconstitutional acts of its officials or employees when those acts implement or execute an unconstitutional municipal policy or custom." Mettler v. Whitledge, 165 F.3d 1197, 1204 (8th Cir. 1999) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978)).

"To establish a city's liability based on its failure to prevent misconduct by employees, the plaintiff must show that city officials had knowledge of prior incidents of police misconduct and deliberately failed to take remedial action." Parrish v. Luckie, 963 F.2d 201, 204 (8th Cir. 1992) (citation omitted). In other words, to prove that a municipal custom exists, Fancher must show:

> (1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
> (2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
> (3) Th[e] plaintiff['s] injur[y] by acts pursuant to the governmental entity's custom, i.e., [proof] that the custom was the moving force behind the constitutional violation.

Mettler, 165 F.3d at 1204 (alterations in original) (citations and internal quotation marks omitted). For a municipality to be liable

in the absence of an official policy, "the alleged misconduct [must be] so pervasive among the non-policy making employees of the municipality as to constitute a custom or usage with the force of law." Radloff v. City of Oelwein, 284 F. Supp. 2d 1145, 1154 (8th Cir. 2003) (citations and internal quotation marks omitted).

Fancher argues that the City has displayed deliberate indifference to its officers' use of excessive force because (1) on the night of the incident, police failed to complete an on-scene use of force investigation, (2) the Internal Affairs investigation resulting from the incident exonerated Klann and Allen for the claims of excessive force and destruction of property, (3) Klann had a history of striking suspects on the head and (4) the Civilian Police Review Authority (CRA) issued an annual report expressing concern at the percentage of officer discipline cases in which allegations were sustained by the CRA with no accompanying discipline imposed by the City police chief.

Such evidence is insufficient to present a triable issue on the Monell claim.  As a threshold matter, both the failure to conduct an on-scene investigation and the subsequent Internal Affairs investigation occurred *after* this incident. As a result, those events cannot be the moving force behind the alleged constitutional violation and are irrelevant. See Mettler, 165 F.3d at 1205 ("[A]n inadequate investigation into the [incident at issue] could not have caused [officers] to use excessive force.

9

Rather, [plaintiff] would need to show that [defendant] had failed to investigate previous incidents ...." (citation omitted)).

Next, the argument regarding Klann's history of force against suspects likewise does not support a Monell claim. Fancher adduces evidence that, on two separate occasions, Klann punched or kicked suspects in the head while apprehending them. See Bennett Aff. Ex. 16, at 4; id. Ex. 17, at 3. Before the instant incident, however, Klann had been the subject of only one CRA complaint for excessive force - which was not sustained - and had never been the subject of an Internal Affairs investigation for excessive force. Klann Dep. 15:22-16:3. As a result, such incidents cannot support a Monell claim against the city. See, e.g., Mettler, 165 F.3d at 1204-05 ("Seven complaints ... accuse [officer] of excessive or unnecessary force, but none of these complaints were sustained after departmental investigation, even in part." (citation omitted)).

Finally, Fancher argues that the statistics from the CRA provide support for a municipal custom claim. Specifically, Fancher argues that, of the 53 allegations against officers that were sustained by the CRA between July 2010 and June 2011, only seven cases resulted in discipline from then-Police Chief Timothy Dolan. See Bennett Aff. Ex. 15, at 7; see also id. Ex. 13, at 5-6 (noting that 3 of 25 sustained allegations between January 2008 and October 2009 resulted in discipline); id. Ex. 14, at 7 (noting that 6 of 52 sustained allegations between October 2009 and June 2010

10

resulted in discipline). Such bare statistics alone, however - without additional evidence regarding the similarity of the conduct in such cases, the relative strength of the claims or the chief's decisionmaking process - are insufficient to present a triable issue on the Monell claim. See Groark v. Timek, 989 F. Supp. 2d 378, 395 (D.N.J. 2013) ("[W]hen a party seeks to submit statistical evidence showing the frequency of excessive force complaints and the rate at which the complaints are sustained to support a Monell claim under § 1983, he must show why those prior incidents were wrongly decided and how the misconduct in those cases is similar to that involved in the present action" (citations and internal quotation marks omitted)). As a result, no reasonable jury could find from the CRA statistics that the City had a custom of allowing officers to use excessive force that is "so permanent and well-settled ... as to [have] the force of law." Harris v. City of Pagedale, 821 F.2d 499, 504 n.7 (8th Cir. 1987) (alteration in original) (citations and internal quotation marks omitted). Therefore, summary judgment on the Monell claim is warranted.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1. The motion to exclude expert testimony [ECF No. 15] is granted in part, consistent with this order; and

      2.    The motion for partial summary judgment [ECF No. 19] is granted.

Dated: August 28, 2014

                                          <u>s/David S. Doty</u>
                                          David S. Doty, Judge
                                          United States District Court